**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
MUMTAZ KHAN
(Immigration File #A076 103 793),

                          Petitioner,

            - against -

U.S. CITIZENSHIP & IMMIGRATION
SERVICE, OFFICE OF U.S. ATTORNEY,
NEW YORK DISTRICT, U.S. ATTORNEY
GENERAL, FEDERAL BUREAU OF
INVESTIGATION,

                      Respondents.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Filed Electronically

No. 07 Civ. 6796 (LAP) (AJP)


**MEMORANDUM OF LAW IN SUPPORT OF THE GOVERNMENT'S**
**MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**


                                  MICHAEL J. GARCIA
                                  United States Attorney for the
                                  Southern District of New York
                                  Attorney for the Federal Defendants
                                  86 Chambers Street, 3rd Floor
                                  New York, New York 10007
                                  Telephone: (212) 637-1945
                                  Facsimile: (212) 637-2750

MATTHEW L. SCHWARTZ
Assistant United States Attorney
      - Of Counsel -

# TABLE OF CONTENTS

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    A.   United States Citizenship and the Naturalization Process. . . . . . . . . . 2

        1.   The Role of CIS in the Naturalization Process. . . . . . . . . . . . . 3

        2.   The Role of the FBI in the Naturalization Process. . . . . . . . . . 5

    B.   Khan's Application for Naturalization. . . . . . . . . . . . . . . . . . . . . . . . . 10

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT
MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

    A.   The Mandamus Statute Does Not Provide Jurisdiction. . . . . . . . . . . 13

        1.   There Is No Mandamus Jurisdiction Over CIS. . . . . . . . . . . . 14

        2.   There Is No Mandamus Jurisdiction Over the FBI. . . . . . . . . 18

    B.   The APA Does Not Provide Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . 19

        1.   The APA Does Not Provide Jurisdiction Over CIS. . . . . . . . . 20

        2.   The APA Does Not Provide Jurisdiction Over the FBI. . . . . . 20

    C.   There is No Federal Question Jurisdiction. . . . . . . . . . . . . . . . . . . . . 24

    D.   8 U.S.C. § 1447 Does Not Provide Jurisdiction. . . . . . . . . . . . . . . . . 24

    E.   8 U.S. C. § 1329 Does Not Provide Jurisdiction. . . . . . . . . . . . . . . . . 25

    F.   The Naturalization Clause Does Not Provide Jurisdiction. . . . . . . . . 25

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

# TABLE OF AUTHORITIES

## CASES

*Aguinda v. Texaco,*
    241 F.3d 194 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Al-Farisi v. Mueller,*
    492 F. Supp. 2d 335 (S.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Alhamedi v. Gonzales,*
    No. 07 Civ. 2541, 2007 WL 1573935 (S.D.N.Y. May 30, 2007). . . . . . . . . . . 25

*Alkeylani v. Department of Homeland Security,*
    514 F. Supp. 2d 258 (D. Conn. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 23

*Allied Chemical Corp. v. Daiflon, Inc.,*
    449 U.S. 33 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Anderson v. Bowen,*
    881 F.2d 1 (2d Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 18

*Aparicio v. Blakeway,*
    302 F.3d 437 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Badier v. Gonzales,*
    475 F. Supp. 2d 1294 (N.D. Ga. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Baez-Fernandez v. INS,*
    385 F. Supp. 2d 292 (S.D.N.Y. 2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Berenyi v. District Director, INS,*
    385 U.S. 630 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Borromeo Escaler v. USCIS,*
    No. 03 Civ. 8418 (BSJ), 2007 WL 1975485 (S.D.N.Y. July 6, 2007). . . . . . . . 3

*Chaunt v. United States,*
    364 U.S. 350 (1960). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Chevron U.S.A. Inc. v. NRDC,*
    467 U.S. 837 (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*City of Milwaukee v. Saxbe*,
    546 F.2d 693 (7th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Costello v. United States*,
    365 U.S. 265 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Dairi v. Chertoff*,
    No.07cv1014, 2007 WL 3232503 (S.D. Cal. Nov. 1, 2007) . . . . . . . . 17, 18, 20

*Dawoud v. Department of Homeland Security*,
    No. 06-CV-1730, 2007 WL 4547863 (N.D. Tex. Dec. 26, 2007). . . . . . . . . . 17

*Eldeeb v. Chertoff*,
    No. 8:07-cv-236, 2007 WL 2209231 (M.D. Fla. July 30, 2007). . . . . . . . . . . 18

*Fifth Avenue Peace Parade Committee v. Hoover*,
    327 F. Supp. 238 (S.D.N.Y. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Heckler v. Ringer*,
    466 U.S. 602  (1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ibrahim v. Chertoff*,
    529 F. Supp. 2d 611 (E.D.N.C. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*In re First Federal Sav. and Loan Association*,
    860 F.2d 135 (4th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Steinhardt Partners, L.P.*,
    9 F.3d 230 (2d Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*INS v. Pangilinan*,
    486 U.S. 875 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

*Kai Tung Chan v. Gantner*,
    464 F.3d 289 (2d Cir. 2006) (per curiam). . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Kaplan v. Chertoff*,
    481 F. Supp. 2d 370 (E.D. Pa. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Karan v. McElroy*,
    No. 02 Civ. 6678, 2003 WL 21209769 (S.D.N.Y. May 23, 2003). . . . . . . . . . 23

*Li v. INS*,
    No. 00 Civ. 7868 (CBM), 2003 WL 102813 (S.D.N.Y. Jan. 10, 2003). . . . . . . . 3

*Luckett v. Bure,*
    290 F.3d 493 (2d Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Malik v. Meissner,*
    82 F.3d 560 (2d Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maloney v. Cuomo,*
    470 F. Supp. 2d 205 (E.D.N.Y. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Makarova v. United States,*
    201 F.3d 110 (2d Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Manzoor v. Chertoff,*
    472 F. Supp. 2d 801 (E.D. Va. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Moretazpour v. Chertoff,*
    No. 07-4264, 2007 WL 4287363 (N.D. Cal. Dec. 5, 2007). . . . . . . . . . . . . . 17

*Mocanu v. Mueller,*
    Nos. 07-0445, 07-0971, 07-3223, 07-2718, 07-2859, 08-195,
    2008 WL 372459 (E.D. Pa. Feb. 8, 2008). . . . . . . . . . . . . . . . . . . . . . . . . 9

*Morgovsky v. Department of Homeland Security,*
    517 F. Supp. 2d 581 (D. Mass. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,*
    460 U.S. 1 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mostovoi v. Secretary of Department of Homeland Security,*
    No. 06 Civ. 6388, 2007 WL 1610209  (S.D.N.Y. June 4, 2007). . . . . . . . . . . 25

*Norton v. Southern Utah Wilderness Alliance,*
    542 U.S. 55 (2004). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*NRDC v. Muszynski,*
    268 F.3d 91 (2d Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Omar v. Mueller,*
    501 F. Supp. 2d 636 (D.N.J. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Pittston Coal Group v. Sebben,*
    488 U.S. 105 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Qui v. Chertoff,*
    486 F. Supp. 2d 412 (D.N.J. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Reno v. Flores,*
    507 U.S. 292 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Silveyra v. Moschorak,*
    989 F.2d 1012 (9th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Sinha v. Upchurch,*
    No. 07 CV 2274, 2007 WL 4322225 (N.D. Ohio Dec. 7, 2007). . . . . . . 17,18,20

*Sprecher v. Graber,*
    716 F.2d 968 (2d Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Takkallapalli v. Chertoff,*
    487 F. Supp. 2d 1094 (W.D. Mo. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Tieri v. INS,*
    457 F.2d 391 (2nd Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States v. Ginsberg,*
    243 U.S. 472 (1917). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*

*United States v. Manzi,*
    276 U.S. 463 (1928). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States v. Minker,*
    350 U.S. 179 (1956). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Vorontsova v. Chertoff,*
    No. 07-10426, 2007 WL 3238026 (D. Mass. Nov. 11, 2007). . . . . . . . . . . . . 20

*Yan v. Mueller,*
    No. H-07-0313, 2007 WL 1521732 (S.D. Tex. May 24, 2007) . . . . . . 17, 18, 23

*Zaytev v. Gantner,*
    No. 04 Civ. 7101, 2004 WL 2251665  (S.D.N.Y. Sept. 24, 2004) . . . . . . . . . . 17

## STATUTES, REGULATIONS, AND RULES

U.S. CONST., Art. I, § 8, cl. 4. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Immigration Act of 1990, Pub. L. No. 101-649, Title IV, § 401(a),
 104 Stat. 4978 (Nov. 29, 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Pub. L. No. 105-119, 111 Stat. 2440 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

5 U.S.C. § 706(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 21

5 U.S.C. §§ 701-706. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 U.S.C. § 1329. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 25

8 U.S.C. § 1421(a) (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 U.S.C. § 1421. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 24

8 U.S.C. § 1423(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C. §1427. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C. § 1445(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 U.S.C. § 1446(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 U.S.C. § 1446 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

8 U.S.C. § 1446(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

8 U.S.C. § 1447. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 U.S.C. § 1447(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 24

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

28 U.S.C. § 1361. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

8 C.F.R. § 103.2(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 C.F.R. Part 312. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 C.F.R. § 316.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

vi

8 C.F.R. § 316.10(a)(1) (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

8 C.F.R. § 316.14 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 C.F.R. § 335.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5. 6, 15

8 C.F.R. § 335.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

8 C.F.R. § 335.3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 15

8 C.F.R. § 335.11 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 14

Fed. R. Civ. P. 12(b)(1)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## OTHER AUTHORITIES

*Information Collections Under Review*, 60 Fed. Reg. 38,371 (July 26, 1995) . . . . . . . 9

Respondents United States Citizenship and Immigration Service (CIS), United States Attorney's Office for the Southern District of New York, the Attorney General of the United States, and the Federal Bureau of Investigation (FBI) (collectively, the "Government"), by their attorney Michael J. Garcia, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The United States Citizenship and Immigration Service is the federal agency charged with adjudicating applications filed by aliens trying to become citizens of the United States. By law, however, CIS is not permitted to approve a naturalization application until after the applicant has gone through a thorough background check; in 2006, the FBI processed in excess of 3,400,000 such background checks (1,633,000 of which were requested by CIS). And, as with most things, that background check is more rigorous now than it was prior to September 11th.

Petitioner Mumtaz Khan, one such naturalization applicant, is suing CIS and the FBI (as well as some uninvolved components of the Department of Justice) because he feels that those agencies have not acted upon his application quickly enough. Styling his complaint as one for mandamus, Khan is necessarily claiming that the agencies have somehow failed to perform their clear, non-discretionary duties. But CIS, far from being compelled to adjudicate his application, is *prohibited*

from doing so unless and until the FBI completes its background check.  The FBI, meanwhile, is under no statutory duty to complete its background check in any set amount of time.  And in view of the millions of background checks it conducts every year, the delay in processing Khan's application — while inconvenient and even regrettable — is certainly not a derogation of the FBI's duty.  Accordingly, Khan cannot demonstrate mandamus jurisdiction over his complaint, nor can he point to any other source of subject matter jurisdiction over his claims.  The complaint must therefore be dismissed.

## BACKGROUND

### A.    United States Citizenship and the Naturalization Process

The Supreme Court has held that "[t]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.  Over no conceivable subject is the legislative power of Congress more complete."  *Reno v. Flores*, 507 U.S. 292, 305 (1993) (citations and internal quotation marks omitted).  The Court has also held that naturalized citizenship in the United States is a "high privilege," *United States v. Manzi*, 276 U.S. 463, 467 (1928), and has called its "[a]cquisition . . . a solemn affair," *Costello v. United States*, 365 U.S. 265, 269 (1961) (quoting *Chaunt v. United States*, 364 U.S. 350, 352 (1960)); *see also United States v. Minker*, 350 U.S. 179, 197 (1956) ("When we deal with citizenship we tread on sensitive ground.") (Douglas, J., concurring).  Accordingly, the burden of demonstrating eligibility for naturalized United States citizenship rests entirely on the alien seeking

2

naturalization.  *See Berenyi v. Dist. Dir., INS*, 385 U.S. 630, 636-37 (1967); *accord INS v. Pangilinan*, 486 U.S. 875, 886 (1988); *Tieri v. INS*, 457 F.2d 391, 393 (2nd Cir. 1972); *see also* 8 C.F.R. §§ 103.2(b)(1) & 316.10(a)(1) (2005).

### 1.    The Role of CIS in the Naturalization Process

Congress is given power by the Constitution "to establish a[] uniform Rule of Naturalization."  U.S. CONST., art. I, § 8, cl. 4.  Before October 1, 1991, applicants for citizenship applied for naturalization directly to the United States district court. *See Kai Tung Chan v. Gantner*, 464 F.3d 289, 290 (2d Cir. 2006) (per curiam); 8 C.F.R. § 335.11 (1990); *see also* 8 U.S.C. § 1421(a) (1988).  The INS investigated the applicant and supplied the court with a report and non-binding recommendations. *See* 8 U.S.C. § 1446(b), (d) (1988); *see also Berenyi*, 385 U.S. at 635 n.7; *Kai Tung Chan,* 464 F.3d at 290.  In response to backlogs in the district courts, however, the Immigration Act of 1990 removed jurisdiction from the courts and vested "sole authority to naturalize persons as citizens of the United States" with the Attorney General and his delegates, 8 U.S.C. § 1421(a) (as amended by Immigration Act of 1990, Pub. L. No. 101-649, Title IV, § 401(a), 104 Stat. 4978, 5038 (Nov. 29, 1990)); *Borromeo Escaler v. USCIS*, No. 03 Civ. 8418 (BSJ), 2007 WL 1975485, at *3 (S.D.N.Y. July 6, 2007); *Li v. INS*, No. 00 Civ. 7868 (CBM), 2003 WL 102813, at *3 (S.D.N.Y. Jan. 10, 2003).

Now, under the immigration statutes and regulations, the naturalization process is generally divided into several discrete stages.  *See* 8 C.F.R. Parts 335 & 336 (2007); *see also Kai Tung Chan,* 464 F.3d at 290-91 (describing administrative

naturalization application process); *Aparicio v. Blakeway*, 302 F.3d 437, 439-40 (5th Cir. 2002) (same). *First*, an applicant must submit completed application materials to CIS, including a complete and accurate Form N-400, a set of fingerprints, criminal background information, and information reflecting satisfaction of the statutory eligibility requirements for naturalization. *See generally* 8 U.S.C. § 1445(a); 8 C.F.R. §§ 316.2, 316.4, 334.1, & 334.2 (2007). *Second*, the applicant must submit to a "personal investigation" into his background. 8 U.S.C. §§ 1446(a), (b), (d); *see also* 8 C.F.R. §§ 335.1 & 335.2(b) (2007). *Third*, the applicant must undergo an "examination" by CIS and other agencies, including questioning under oath by a CIS naturalization examiner with respect to his satisfaction of the general eligibility requirements, generally referred to as a "naturalization interview." *See* 8 U.S.C. §§1427(a)-(d) (general naturalization requirements relating to residence in United States, physical presence in country, and moral character); *see also* 8 C.F.R. §§ 316.14, 335.2, 335.3 (2007). *Fourth*, most applicants must also be tested to ensure they fulfill the statutory requirements of proficiency in the English language and a knowledge of United States history and civics. *See* 8 U.S.C. § 1423(a); 8 C.F.R. Part 312 (2007). *See generally Li*, 2002 WL 102813, at *3 (describing application process).

*Fifth*, and finally, if a naturalization application is granted by CIS, either the agency or the state or federal courts may administer the oath of citizenship to the applicant. *See* 8 U.S.C. § 1421(b).

### 2.    The Role of the FBI in the Naturalization Process

The FBI is involved at the second stage of the naturalization process, the "personal investigation" into the applicant's background.  There are no precise statutory or regulatory requirements for the contents of the investigation, except that it constitute a "full criminal background check," Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (1998), and that "at a minimum" "[t]he investigation shall consist [of] . . . a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application."  8 C.F.R. § 335.1 (also noting that the neighborhood check requirement can be waived by the relevant CIS district director).

CIS is not permitted to move to the third step — scheduling and conducting a naturalization interview  — until after it receives a "definitive response" from the FBI containing the results of the background check.  8 C.F.R. § 335.2(b); *see also* Declaration of Heidi Bijolle ("Bijolle Decl.") ¶ 4.  The regulations provide:

> Completion of criminal background checks before examination. The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only* after the Service has received a definitive response from the Federal Bureau of Investigation that a *full criminal background check* of an applicant has been completed.

8 C.F.R. § 335.2(b) (emphases supplied); *see also* Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (1998) (no funds "shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the

Federal Bureau of Investigation that a full criminal background check has been completed").  The regulation then provides that such a "definitive response" must "include[]" information about whether the applicant has an administrative or criminal record," *id.*, but does not otherwise circumscribe the extent of the FBI background check.  The meaning of the requirement that CIS and the FBI conduct "a review of all pertinent records," 8 C.F.R. § 335.1 — and therefore the scope of the "full criminal background check" — is left to the discretion of the FBI and CIS.

As part of the review of pertinent records, CIS asks the FBI to conduct a "name check" of every applicant, *see* Bijolle Decl. ¶ 5; the precise contours of the FBI name check investigation are described in extensive detail in the accompanying declaration of Michael A. Cannon, the Section Chief of the National Name Check Program ("Cannon Decl.").  In a nutshell, however, the FBI name check investigation involves a search for the applicant's name (including various permutations and misspellings thereof), social security number, and dates close to the applicant's date of birth in the FBI's Central Records System, and a review of any records containing the applicant's name.  The name check process can involve up to four steps:

- First, the FBI conducts an automated search, using its "Universal Index."  *See* Cannon Decl. ¶¶ 11-13.  Approximately 68% of names return a "No Record" finding from the Universal Index within 48-72 hours, and are returned to CIS.  *See* Cannon Decl. ¶ 13.

- Second, if an applicant's name returns a "hit" from the Universal

Index, the FBI moves on to "name searching." *See* Cannon Decl. ¶ 14. At this stage, an FBI employee manually enters the applicant's name into the computer database, searching different fields. *See id.* This step typically takes 30-60 days; after the name search, another 22% of applicants will have returned "No Record," and the file will be returned to CIS. *See id.*

- For the 10% of applicants who are not screened out after the name search stage — *i.e.*, those applicants whose name actually appears in an FBI record — the third and fourth stages involve review of the relevant records, which may involve review of archived, paper records. *See* Cannon Decl. ¶ 15. Less than 1% of applicants are associated with "derogatory information" in the FBI files; for that 1% or so, the information is passed on to CIS. *See* Cannon Decl. ¶ 17; Bijolle Decl. ¶ 9.

The volume of name check investigations processed by the FBI, meanwhile, is staggering. Prior to September 11, 2001, the FBI processed approximately 2.5 million name checks every year. *See* Cannon Decl. ¶ 21. Since the terrorist attacks of September 11th, however, and as a result of the growth of the FBI's counter-terrorism effort, the name check program has grown considerably. *See* Cannon Decl. ¶ 21. In 2006 alone, the FBI processed in excess of 3.4 million background checks, and approximately 45% of them (*i.e.*, about 1.6 million) were submitted by

CIS.  *See* Cannon Decl. ¶¶ 21-22.[1]  Moreover, since November 2002 (and as a result of heightened national security concerns that grew out of the 2001 terrorist attack), CIS has requested that the FBI conduct more detailed name check searches than it did previously.  *See* Cannon Decl. ¶ 23; *see also* Bijolle Decl. ¶ 3.  In early 2003, CIS resubmitted 2.7 million names of applicants who had cleared under the old name check protocol for new FBI name checks under the more detailed search.  *See* Cannon Decl. ¶ 24.

The FBI generally works on the oldest background checks first, using a "first-in, first-served protocol," which reflects the notion that all applicants are equally deserving of consideration, and which ensures that they are treated fairly. *See* Cannon Decl. ¶ 18.[2]  Nonetheless, the volume of name checks run in the ordinary course, compounded by CIS's re-submission of 2.7 million names, has created a delay in the processing of any one CIS name check request.  Adding to the delay are the problems created by names associated with multiple FBI files, common names resulting in numerous false positives, name check subjects with multiple aliases, and the fact that some record need to be retrieved from archives or

---

[1]    In addition to name checks run in the course of the FBI's law enforcement and anti-terrorism efforts, the remaining 55% of name check requests come from a variety of sources, including Freedom of Information Act requests.  An FBI name check is also a prerequisite to federal employment.  *See generally* Cannon Decl. ¶ 4.

[2]    The FBI makes exceptions to the first-in, first-served policy when CIS requests that a name check be expedited.  *See* Cannon Decl. ¶ 19.  CIS has issued specific guidelines regarding the limited situations when expedited review is appropriate.  *See* Bijolle Decl. ¶ 10; Ex. A.

field offices and manually reviewed. *See* Cannon Decl. ¶¶ 25-29. In addition, processing some names on an expedited basis delays the orderly processing of all other names. *See* Cannon Decl. ¶ 30.

The FBI therefore processes name check requests as quickly as possible, in a systematic and orderly fashion, but cannot predict when any one applicant's investigation will be complete. *See* Cannon Decl. ¶ 39. Since September 11th, the volume and depth of the investigations have created delays that, while necessary, are regrettable and difficult for the individual naturalization applicant to understand. The FBI and CIS are working together to find solutions to streamline this process in the future, including hiring additional staff, scanning old paper records so that they are machine-searchable, updating technology, and developing a centralized depository for record. *See* Cannon Decl. ¶¶ 31-39; Bijolle Decl. ¶ 3.[3]

---

[3]    In a recent decision, one judge determined that there was no statutory authority for the name check program, and ordered the petitioners to be naturalized without having cleared the process. *See Mocanu v. Mueller*, Nos. 07-0445, 07-0971, 07-3223, 07-2718, 07-2859, 08-195, 2008 WL 372459 (E.D. Pa. Feb. 8, 2008), *as modified by*, 2008 WL 570953 (E.D. Pa. Feb. 28, 2008). *Mocanu* was wrong. CIS (and INS before it) has consistently required name checks as part of the "full criminal background check" and "review of pertinent records" required by Congress. *See, e.g., Information Collections Under Review*, 60 Fed. Reg. 38,371 (July 26, 1995) (giving notice that naturalization applicant's Form G-325, or Biographical Information Form, would be used to "check other agency records (FBI, CIA, etc.) on applications or petitions submitted by applicants for benefits under the [INA]. . . ."). CIS's consistent interpretation of its own enabling statutes and regulations is entitled to conclusive judicial deference, a point ignored by the *Mocanu* court. *See NRDC v. Muszynski*, 268 F.3d 91, 98 (2d Cir. 2001) (courts "give deference to the view of the agency tasked with administering the statute, particularly insofar as those views are expressed in rules and regulations that implement the statute"); *see generally Chevron U.S.A. Inc. v. NRDC*, 467 U.S. 837, 842 (1984).

**B.     Khan's Application for Naturalization**

Khan, a lawful permanent resident of the United States since 2000, filed his N-400 application on or about September 6, 2005. *See* Compl. ¶¶ 8-9; Bijolle Decl. ¶ 11. CIS began processing his application immediately. *See* Bijolle Decl. ¶ 11.

On September 19, 2005 — within two weeks of receiving the application — CIS requested that the FBI run a name check on Khan. *See id.* ¶ 13. The FBI received that request on September 22, 2005, and it is still pending. *See* Cannon Decl. ¶ 41. On September 29, 2005, Khan was fingerprinted, resulting in a "non-hit." *See* Bijolle Decl. ¶ 12.

Because Khan's background check is still pending, he has not yet had his naturalization interview with CIS. *See* Compl. ¶ 11. While Khan's application is pending, he retains all of the rights and benefits of a lawful permanent resident, including the right to live and work in the United States and to travel freely abroad. *See* Bijolle Decl. ¶ 16.

On or about July 25, 2007, Khan filed this action seeking to "compel the USCIS or the FBI to complete adjudication of Petitioner's Naturalization Application." *See* Compl. at 2 (*ad damnum* clause); *id.* ¶ 2 ("This is an action for mandamus compelling [CIS] to adjudicate Petitioner's application for naturalization").[4] He seems to identify at least six purported bases for federal

_____

[4]     Khan's complaint also names the United States Attorney's Office and the Attorney General as respondents, but seeks no relief against them and identifies no duties that they have supposedly neglected. Moreover, as explained above, neither the Attorney General (except in the sense that he is technically in charge of the FBI, and in the sense that he has the ultimate statutory authority in

10

jurisdiction:

- The Administrative Procedure Act, 5 U.S.C. §§ 701-706 (APA). *See* Compl. ¶ 1.

- 8 U.S.C. § 1329, which provides for federal jurisdiction over "all causes, civil and criminal, brought by the United States that arise under the provisions of" the Immigration and Nationality Act. *See* Compl. ¶ 1.

- 8 U.S.C. § 1447, which provides for federal jurisdiction over unadjudicated naturalization applications, if 120 days have elapsed since the applicant's naturalization interview by CIS. *See* Compl. ¶ 1.

- 28 U.S.C. § 1331, or "federal question" jurisdiction. *See* Compl. ¶ 1.

- 28 U.S.C. § 1361, the mandamus statute. *See* Compl. ¶ 1.

- Article I, section 8, clause 4 of the Constitution, which lists among Congress's enumerated powers the authority "[t]o establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States." *See* Compl. ¶ 3.

The Government answered on November 5, 2007, contending, among other things, that none of these purported bases provide subject matter jurisdiction over the complaint.

## ARGUMENT

"'A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the [court] lacks the statutory or constitutional power to adjudicate it.'" *Luckett v. Bure*, 290 F.3d 493, 496 (2d Cir. 2002) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). A plaintiff bears the burden of establishing the court's jurisdiction by a preponderance of the evidence. *See*

---

matters of naturalization) nor the United States Attorney's Office plays any direct role in the naturalization adjudication process. Those respondents should therefore be summarily dismissed.

*Luckett*, 290 F.3d at 496-97; *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996).  To resolve a Rule 12(b)(1) motion, the court must accept all factual allegations in the complaint as true, but should not draw inferences favorable to the party asserting jurisdiction, and may consider materials beyond the pleadings without converting the motion to dismiss into a motion for summary judgment.  *See Maloney v. Cuomo*, 470 F. Supp. 2d 205, 210 (E.D.N.Y. 2007); *Luckett*, 290 F.3d at 496-97.

## THE COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

As set forth above, Congress entrusted CIS with the responsibility of processing and adjudicating applications for naturalization, with the proviso that no applicant can be naturalized (or even scheduled for a naturalization interview) until the FBI completes its background check.  In this case, as in all others, the FBI and CIS are handling Khan's application according to a well-established process.  Due to the overwhelming number of applicants processed by CIS and name checks performed by the FBI, however, that process can be quite time-consuming.  But this Court has no jurisdiction to force CIS and FBI to decide Khan's application more quickly, nor would it be fair to the other applicants ahead of him in the FBI's name check queue to do so.

Khan alleges at least six bases for jurisdiction, but none of them actually work.  We address them here in more-or-less descending order of seriousness.

### A.    The Mandamus Statute Does Not Provide Jurisdiction

Khan styles his complaint as a "Complaint for Mandamus," suggesting that the mandamus statute, 28 U.S.C. § 1361, is his actual, asserted basis for jurisdiction. Mandamus relief is available "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. It is a "drastic" remedy, "to be invoked only in extraordinary situations." *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 34 (1980); *see also Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988) (describing mandamus under 28 U.S.C. § 1361 as an "extraordinary remedy"); *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 18 (1983) (mandamus is an "extraordinary writ" that must be exercised cautiously); *Aguinda v. Texaco*, 241 F.3d 194, 200 (2d Cir. 2001).

Mandamus jurisdiction therefore arises only where: (1) the plaintiff has "a clear right" to the relief sought; (2) the defendant has "a plainly defined and peremptory duty" to perform the act in question; and (3) no other adequate remedy is available. *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989); *see also Heckler v. Ringer*, 466 U.S. 602, 616 (1984) (explaining that the mandamus statute is intended to "provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty."); *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 233-34 (2d Cir. 1993) (to merit mandamus relief, a party "must show that he or she lacks an adequate alternative means to obtain the relief sought, and must demonstrate a clear and indisputable right to the

13

issuance of the writ" (citations omitted)).  When a party seeking relief under 28 U.S.C. § 1361 fails to demonstrate the three necessary criteria for the issuance of the writ, the district court lacks jurisdiction to entertain the request for mandamus. *See Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983); *see also City of Milwaukee v. Saxbe*, 546 F.2d 693, 700 (7th Cir. 1976) ("in mandamus actions, the usually separate questions of jurisdiction and failure-to-state-a-claim merge" (alteration omitted)).

### 1.    There Is No Mandamus Jurisdiction Over CIS

Khan's complaint fails to identify any "clear nondiscretionary" or "peremptory duty" that CIS owes him that would serve as a basis for this Court to exercise mandamus jurisdiction.  Khan alleges that CIS has "neglected to adjudicate [his] Naturalization Application in a timely manner, thereby denying [Khan] his right to become a naturalized citizen of the United States."  Compl. ¶ 13. Therefore, jurisdiction over Khan's claim against CIS could exist only if CIS owes him a clear duty to adjudicate his application in less time than it has been pending. That claim, however, must be rejected because (1) there is no duty to adjudicate a naturalization application in any specific amount of time, and (2) CIS is *precluded* by statute and regulation from adjudicating Khan's application at this time.

As set forth in more detail above, CIS's duties with regard to the adjudication of naturalization applications is laid out in federal statutes and regulations.  A person seeking to acquire rights as a citizen "can rightfully obtain them only upon terms and conditions specified by Congress."  *I.N.S. v. Pangilinan*, 486 U.S. 875,

884 (1988) (quoting *United States v. Ginsberg*, 243 U.S. 472, 474 (1917)).  Among

other things, the statutory scheme enacted by congress requires that "[b]efore a

person may be naturalized," the Government "shall conduct a personal

investigation" of the applicant, and the statute details the conduct of the

examination.  *See* 8 U.S.C. § 1446(a); *see also* 8 C.F.R. §§ 335.1 - 335.3.

But despite Congress's extensive regulation of the adjudication process, there

is no requirement that naturalization applications be adjudicated in any specific

amount of time from the date of application.  The decision to omit a time

requirement for adjudications based on the date the application was filed was not

an oversight.  In fact, the Immigration and Nationality Act (INA) and federal

regulations *do* provide a timeliness requirement concerning adjudications of

naturalization applications, but the trigger is not the date of the application.

Instead, the regulations require that a "decision to grant or deny the application

shall be made at the time of the initial examination or within 120-days after the

date of the initial examination of the applicant."  *See* 8 C.F.R. § 335.3(a).  The INA

specifically provides for district court jurisdiction if the Government fails to make

its adjudication on an application by the close of the 120-day period following the

examination.  *See* 8 U.S.C. § 1447(b); *see also infra* Section D (describing § 1447(b)'s

jurisdictional grant, and explaining that the "initial examination" refers to the CIS

naturalization interview).  Thus, Congress considered whether there should be a

time limit for CIS to adjudicate naturalization applications, and chose to peg it to

the date of the Government's examination, and not to the date of the initial

application.  As one court, addressing precisely this question on precisely these facts, put it:  "[w]hile it is true that naturalization applicants have a clear right to have their applications adjudicated, they do not have a right to have their application adjudicated within a specific time."  *Ibrahim v. Chertoff*, 529 F. Supp. 2d 611, 614 (E.D.N.C. 2007) (citations omitted).

Here, it is undisputed that Khan has not yet been examined by CIS.  *See* Compl. ¶ 11; Ex. D.  *See also* Bijolle Decl. ¶¶ 4, 14.[5]  Accordingly, the 120-day period for granting or denying his N-400 application has not yet begun to run.  *See, e.g., Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005) (Jones, *J.*) (finding no APA jurisdiction where naturalization applicant had not been interviewed by CIS, and that 8 U.S.C. § 1447(b)'s "120-day period begins to accrue only after examination").  CIS therefore has no "clear nondiscretionary duty" to adjudicate Khan's application in any particular period of time, and there is therefore no basis for mandamus jurisdiction.

Moreover, CIS is actually *prohibited* from adjudicating Khan's application at this time, by statute and regulation, because the FBI has not completed his background check.  *See* Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (1998) (no funds "shall be used to complete adjudication of an application for naturalization unless [CIS] has received confirmation from the Federal Bureau of Investigation

---

[5]     Khan notes that, at one point, he had scheduled a naturalization interview, but that it was subsequently cancelled due to "unforeseen circumstances."  *See* Compl. ¶¶ 10-11.  There is no jurisdictional or statutory significance to that fact, however.

that a full criminal background check has been *completed*" (emphasis added)); 8 C.F.R. § 335.2(b) ("The Service will notify applicants for naturalization to appear before a Service officer for initial examination on the naturalization application *only* after the Service has received a definitive response from the Federal Bureau of Investigation that a full criminal background check of an applicant has been completed." (emphasis supplied)).  CIS submitted a request to the FBI to conduct a background check regarding Khan, which is still pending.  *See* Bijolle Decl. ¶ 13; Cannon Decl. ¶ 41.  Therefore, CIS is not permitted to grant Khan's N-400 application or even to conduct its initial examination of him.  For that reason as well, CIS owes no "clear nondiscretionary duty" to adjudicate Khan's application.[6]

---

[6]    The Government is not aware of any decisions in this district that have considered whether there is mandamus jurisdiction in a case, like this one, where a naturalization applicant has not yet been interviewed, but nonetheless claims an unreasonable delay in adjudication.  Judge Jones *has* concluded that there is no jurisdiction in this factual scenario, but she did not deal specifically with a mandamus theory.  *See Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005) (rejecting jurisdiction under APA and INA).  And a number of courts in this district have rejected mandamus jurisdiction on similar, but not identical, facts.  *See, e.g., Zaytev v. Gantner*, No. 04 Civ. 7101, 2004 WL 2251665 (S.D.N.Y. Sept. 24, 2004) (Pauley, *J.*) (denying mandamus on plaintiffs' visa applications because, even if CIS has a duty to adjudicate applications within a reasonable time, it is not required to make any determinations until the requisite FBI security checks have been completed).

District courts elsewhere *have* addressed precisely this theory on precisely these facts, and have come down on both sides of the issue.  *Compare, e.g., Ibrahim v. Chertoff*, 529 F. Supp. 2d 611 (E.D.N.C. 2007) (holding that mandamus jurisdiction is lacking because there is no "clear nondiscretionary duty" to adjudicate a naturalization application while the FBI background check is pending); *Sinha v. Upchurch*, No. 07 CV 2274, 2007 WL 4322225, at *4 (N.D. Ohio Dec. 7, 2007) (same); *Omar v. Mueller*, 501 F. Supp. 2d 636, 639-40 (D.N.J. 2007) (same); *Dairi v. Chertoff*, No.07cv1014, 2007 WL 3232503, at *1-2 (S.D. Cal. Nov. 1, 2007) (same); *Yan v. Mueller*, No. H-07-0313, 2007 WL 1521732, at *6-8 (S.D. Tex. May

### 2.    There Is No Mandamus Jurisdiction Over the FBI

There is likewise no mandamus jurisdiction over the FBI, because there is no statute or regulation governing how thoroughly or quickly the FBI conducts its background checks for applicants seeking naturalization.  *See Ibrahim*, 529 F. Supp. 2d at 614; *Sinha*, 2007 WL 4322225, at *5; *Omar*, 501 F. Supp. 2d at 640; *Dairi*, 2007 WL 3232503, at *1-2; *Yan*, 2007 WL 1521732, at *7-8.  Khan implicitly seeks to impose a requirement that the FBI conduct its background check in what he deems to be a "timely manner."  Compl. ¶ 13.  But he does not allege what time period would have been timely, much less the time period that is "plainly defined and peremptory."  *Anderson*, 881 F.2d at 5.  *See also Silveyra v. Moschorak*, 989 F.2d 1012, 1014 (9th Cir. 1993) (mandamus jurisdiction only appropriate where "an official's duty to act is ministerial in nature and so plain as to be free from doubt"), *superseded in irrelevant part by,* Pub. L. No. 103-416, § 225, 108 Stat. 4305, 4325 (1994); *In re First Fed. Sav. and Loan Ass'n*, 860 F.2d 135, 138 (4th Cir. 1988); *Fifth Avenue Peace Parade Committee v. Hoover*, 327 F. Supp. 238, 242 (S.D.N.Y. 1971).

Because Khan cannot establish that the time taken by the FBI in completing his background check constitutes a violation of a clearly established duty, this

---

24, 2007) (same); *Badier v. Gonzales*, 475 F. Supp. 2d 1294, 1298-99 (N.D. Ga. 2006) (same), *with, e.g., Kaplan v. Chertoff*, 481 F. Supp. 2d 370, 400-01 (E.D. Pa. 2007) (holding that there is mandamus jurisdiction, though acknowledging that CIS "does not have a mandatory duty to take action on an application for naturalization until the FBI has completed its background checks"); *Dawoud v. Dep't of Homeland Security*, No. 06-CV-1730, 2007 WL 4547863 (N.D. Tex. Dec. 26, 2007) (same); *Moretazpour v. Chertoff*, No. 07-4264, 2007 WL 4287363 (N.D. Cal. Dec. 5, 2007) (same).  No circuit court, as far as the Government has found, has addressed the question.

Court lacks subject matter jurisdiction over any claims against the FBI. *See, e.g., Ibrahim*, 529 F. Supp. 2d at 614; *Sinha,*, 2007 WL 4322225, at *5; *Omar*, 501 F. Supp. 2d at 640; *Dairi*, 2007 WL 3232503, at *1-2; *Yan*, 2007 WL 1521732, at *7-8; *cf. Eldeeb v. Chertoff*, No. 8:07-cv-236, 2007 WL 2209231, at *23 (M.D. Fla. July 30, 2007) (finding lack of subject matter jurisdiction under mandamus or APA "with respect to the pace at which the FBI processes a Name Check for CIS" for adjustment of status applicant).

**B.    The APA Does Not Provide Jurisdiction**

Khan also contends that the Court has jurisdiction under the APA, presumably on the theory that CIS or the FBI has "unlawfully withheld or unreasonably delayed" agency action to which he is entitled.  5 U.S.C. § 706(1).  But for largely the same reasons that there is no mandamus jurisdiction, there is also no jurisdiction under the APA — both statutes require, as a jurisdictional predicate, a plaintiff to demonstrate that he is clearly entitled to the relevant agency action. *See Ibrahim*, 529 F. Supp. 2d at 614-15 ("Like the Mandamus Act, the APA allows courts to compel legally mandated government actions.  Such claims under the APA must pertain to actions the government is required by law to accomplish and are subject to the same standard as those under the Mandamus Act.  For the same reasons the court does not have jurisdiction under the Mandamus Act, the court cannot consider plaintiff's claim based on the APA." (internal citation and footnote omitted)).

In reviewing the applicable section of the APA, the Supreme Court held that

"a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original). As the *Norton* Court explained, "[t]he limitation to *required* agency action rules out judicial direction or even discrete agency action that is not demanded by law." *Id.* at 65 (emphasis in original).

### 1.    The APA Does Not Provide Jurisdiction Over CIS

Applying these standards, there is no APA jurisdiction over CIS in this case. The fact that CIS has not yet adjudicated Khan's N-400 application cannot be considered unlawful or unreasonable delay under the APA.  As described above, CIS is not required to process Khan's N-400 application or to conduct his initial examination within a specific time period.  Indeed, federal regulations prohibit CIS from conducting the required examination before the FBI background check is complete.  Thus, plaintiff fails to allege any "required agency action" by CIS that could support APA jurisdiction.  *See Baez-Fernandez*, 385 F. Supp. 2d at 294-95; *Ibrahim*, 529 F. Supp. 2d at 614-15; *Sinha*, 2007 WL 4322225, at *4; *Omar*, 501 F. Supp. 2d at 540; *Dairi*, 2007 WL 3232503, at *1-2; *see generally Norton*, 542 U.S. at 65.[7]

---

[7]    Because APA jurisdiction and mandamus jurisdiction implicate the same question, there is also a split in authority outside of this district on that point. *See generally Ibrahim*, 529 F. Supp. 2d at 615 n.3 (discussing split in authority, and citing cases); *see also supra*, note 3 (discussing split in authority on mandamus jurisdiction).  Within this district, the only decision addressing APA jurisdiction on these facts held that there was none.  *See Baez-Fernandez v. I.N.S.*, 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005) (Jones, *J.*).

### 2.    The APA Does Not Provide Jurisdiction Over the FBI

Likewise, there is no APA jurisdiction over the FBI because Khan cannot establish that the FBI has acted unreasonably in its handling of his background check.  Khan's implicit allegation that the FBI should have worked faster on his background check is baseless.  As discussed at length above in the context of mandamus jurisdiction, there is no requirement that the FBI process a name check request in any particular amount of time.  Khan's only hope of claiming APA jurisdiction, therefore, rests on his ability to show that the FBI "unreasonably delayed" in processing his check.  5 U.S.C. § 706(1).  But the FBI has not "delayed" at all, even if Khan has had to wait for longer than he would have liked.

Khan's N-400 application has been pending and the FBI has been actively processing his background check since September 2005, or about 30 months.  *See* Compl. ¶ 9; Bijolle Decl. ¶¶ 11, 13; Cannon Decl. ¶ 41.  As other courts have held, this length of time is not unreasonable.  *See Takkallapalli v. Chertoff*, 487 F. Supp. 2d 1094, 1098-99 (W.D. Mo. 2007) (finding three-year delay in processing FBI background check not to be unreasonable and denying mandamus regarding plaintiff's application for adjustment of status); *Vorontsova v. Chertoff*, No. 07-10426, 2007 WL 3238026, at *3 (D. Mass. Nov. 11, 2007) (finding twenty-one months not unreasonable and granting motion to dismiss for lack of APA or mandamus jurisdiction concerning adjustment of status application where "the FBI processed 3.4 million name checks in fiscal year 2006 alone"); *Morgovsky v. Department of Homeland Security*, 517 F. Supp. 2d 581, 585 (D. Mass. 2007)

(finding sixteen months not unreasonable because "delay in processing [plaintiff's] background check is attributable to neither agency malfeasance nor inaction, but to an enormous flood of applications that have slowed the bureaucratic process and led to a backlog in the completion of the required background checks"), *but cf. Alkeylani v. Department of Homeland Security*, 514 F. Supp. 2d 258, 266 (D. Conn. 2007) (finding delay of more than three years to be unreasonable).

As these courts have noted, the reasonableness of the FBI's processing time must be viewed in light of several factors. *First*, the volume of background checks handled by the FBI is enormous. The FBI processes millions of background checks every year, and uses a "first-in, first-served protocol" in deciding when to work on each applicant's background check. *See* Cannon Decl. ¶¶ 18, 21, 22. *Second*, in light of the important national security interests that undergird the name check requirement — and the added importance that requirement has taken on since September 11th — it is critical that the FBI process each name check thoroughly and completely.

*Third*, and as a result of the first two considerations, the Court should consider the FBI's good faith in handling this volume of name checks. The delay in completing any one name check — while it may be unbearable to the applicant — is not the result of agency inaction or malfeasance, but simply of the back-log of requests. Thus, the result of concluding that this applicant's name check should be expedited would not be to spur the agency from inaction, but it would simply be a pass to move Khan to the head of the line. *Fourth*, and finally, the get-to-the-front-

22

of-the-line pass created by granting petitions such as this one creates a perverse incentive for applicants to file lawsuits, placing a further burden on the agency to defend suits like this one while disturbing the equity of the FBI's "first-in, first-served protocol." As Judge Nancy Atlas explained: "granting review of the petitioner's claims would only serve to further divert agency attention and stretch scarce resources away from the adjudication of naturalization applications by encouraging other applicants to file suit to receive expedited treatment rather than wait their turn in line." *Yan*, 2007 WL 1521732, at *7 (citing *Manzoor v. Chertoff*, 472 F. Supp. 2d 801, 809 (E.D. Va. 2007) (declining to grant relief in a case involving a delayed name check to avoid providing "an incentive for naturalization applicants to file civil actions in an effort to . . . 'jump to the front of the line'"); *Qui v. Chertoff*, 486 F. Supp. 2d 412, 420 (D.N.J. 2007) (declining to grant review where doing so "would do nothing more than shuffle to the front of the line those . . . applicants canny enough to file a complaint in federal court")).[8]

---

[8]    Indeed, CIS formerly had a policy of requesting that name checks be expedited upon the filing of mandamus actions or other federal litigation. CIS discontinued that practice, however, because of the increase in petitions, like this one, designed to force CIS to adjudicate an application before its turn. *See* Bijolle Decl., Ex. A (CIS "is no longer routinely requesting the FBI to expedite a name check when the only reason for the request is that a mandamus (or other federal court petition) is filed in the case"); Bijolle Decl. ¶ 10 (explaining that CIS now requests expedited name check from FBI only where applicant (1) is about to be deployed by the military; (2) is about to lose his current immigration benefits; (3) is about to lose other benefits that depend on immigration status, such as Social Security; or (4) can demonstrate "[s]ignificant and compelling reasons, such as critical medical conditions").

**C.    There is No Federal Question Jurisdiction**

Khan also asserts general "federal question" jurisdiction under 28 U.S.C.

§ 1331.  But "the federal question statute, 28 U.S.C. § 1331, standing alone, . . .

does not confer subject matter jurisdiction, because the statute only provides for

jurisdiction in district courts over claims that themselves 'arise under' some other

relevant federal Constitutional or statutory provision."  *See Karan v. McElroy*, No.

02 Civ. 6678, 2003 WL 21209769, at *2 (S.D.N.Y. May 23, 2003); *see also Alkeylani*

*v. Dep't of Homeland Security*, 514 F. Supp. 2d 258, 264 (D. Conn. 2007) (federal

question statute, together with APA, in some cases can provide jurisdiction).

**D.    8 U.S.C. § 1447 Does Not Provide Jurisdiction**

Khan also points to the INA as a source of jurisdiction.  The INA *does*

explicitly confer jurisdiction over a claim that CIS failed to timely adjudicate a

naturalization application, but only in certain situations:

> If there is a failure to make a determination [on an application for naturalization] *before the end of the 120-day period after the date on which the examination is conducted* under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter.

8 U.S.C. § 1447(b) (emphasis supplied).  Thus, under the INA, a district court has

jurisdiction to hear a claim like this *only* when an adjudication is not completed

within 120 days after the "examination is conducted."  *Id.*; *see also Omar v. Mueller*,

501 F. Supp. 2d 636, 640-41 (D.N.J. 2007) (citing *Baez-Fernandez v. I.N.S.*, 385 F.

Supp. 2d 292, 294 (S.D.N.Y. 2005)).[9]  The term "examination" in this context refers

to the naturalization interview conducted by a CIS District Adjudications Officer,

*see* 8 U.S.C. § 1446(b) (describing "examinations upon applications for

naturalization"); *see also Al-Farisi v. Mueller*, 492 F. Supp. 2d 335, 336-37 (S.D.N.Y.

2007) (Cederbaum, *J.*) (finding jurisdiction under 8 U.S.C. § 1447(b) where CIS

failed to adjudicate naturalization application within 120 days of "examination,"

*i.e.*, initial interview of applicant, but explaining that if requirements of § 1447(b)

had not been satisfied, "there would be no subject matter jurisdiction"); *Mostovoi v.*

*Secretary of Dep't of Homeland Security*, No. 06 Civ. 6388, 2007 WL 1610209, at *3

(S.D.N.Y. June 4, 2007) (Lynch, *J.*) ("examination" underlying § 1447(b)

jurisdiction is discrete event of initial applicant interview); *Alhamedi v. Gonzales*,

No. 07 Civ. 2541, 2007 WL 1573935, at *3 (S.D.N.Y. May 30, 2007) (Koeltl, *J.*)

(finding jurisdiction under § 1447(b) where CIS failed to adjudicate naturalization

application within 120 days of initial interview of applicant).

Because Khan has not yet had his naturalization interview — because he has

not yet cleared the FBI background check process — section 1447 is not implicated

and does not provide a source of jurisdiction.

**E.    8 U. S. C. § 1329 Does Not Provide Jurisdiction**

Khan also cites 8 U.S.C. § 1329 of the INA as a basis for jurisdiction.  *See*

---

[9]      The INA also confers jurisdiction in one other situation, plainly not relevant here.  Where CIS denies an application, the applicant is then (after first exhausting his administrative remedies) entitled to *de novo* review in federal court. *See* 8 U.S.C. § 1421(c).

Compl. ¶ 1.  But that section is inapplicable on its face:  it applies only to cases "brought by the United States."  8 U.S.C. § 1329.

## F.    The Naturalization Clause Does Not Provide Jurisdiction

Finally, Khan cites the Naturalization Clause of the United States Constitution.  *See* Compl. ¶ 3 ("The federal judiciary's authority to consider whether immigration policies and procedures violate constitutional rights and protections is found in [the Naturalization Clause]").  The Naturalization Clause, however, has nothing to do with federal court jurisdiction.  Rather, it describes one of the so-called "enumerated powers" granted to Congress by the Constitution; it gives to Congress the authority "[t]o establish an uniform Rule of Naturalization, and uniform Laws on the subject of Bankruptcies throughout the United States."  U.S. CONST., art. I ("The Legislative Branch"), § 8 ("Power of Congress"), cl. 4.

## CONCLUSION

For the reasons just given, the Court should grant the Government's motion and dismiss the Complaint for lack of subject matter jurisdiction

Dated:        New York, New York
              March 21, 2008

                        MICHAEL J. GARCIA
                        United States Attorney
                        Attorney for the Respondents

              By:    /s/  Matthew L. Schwartz
                        MATTHEW L. SCHWARTZ
                        Assistant United States Attorney
                        Telephone: (212) 637-1945
                        Facsimile:  (212) 637-2750