**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x

MUMTAZ KHAN,
(Immigration File #A076 103 793),

               Petitioner,

   - against -

U.S. CITIZENSHIP & IMMIGRATION
SERVICE, OFFICE OF U.S. ATTORNEY,
NEW YORK DISTRICT, U.S. ATTORNEY
GENERAL, FEDERAL BUREAU OF
INVESTIGATION,

               Respondents.

-------------------------------------------------------x

Filed Electronically

No. 07 Civ. 6796 (LAP) (AJP)


# MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

RAKHEL SPEYER MILSTEIN
Attorney for the Petitioner
Assadi & Milstein, LLP
200 W. 57th St., Ste. 900
New York, NY 10019
Telephone: (212) 981-1981
Fax: (212) 980-2968

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES...................................................................ii

PRELIMINARY STATEMENT.......................................................... 1

FACTS AND BACKGROUND……...................................................... 1

ARGUMENT.................................................................................3

     A.     The APA in Conjunction with the Federal Question
             Statute Provides Jurisdiction..................................................4

           1.  The APA in Conjunction with the Federal Question
               Statute Provides Jurisdiction Over the CIS...........….......…... 6

           2.  The APA in Conjunction with the Federal Question
               Statute provides Jurisdiction Over the FBI..........................11

     B.     The Mandamus Statute Provides Jurisdiction..................…............15

           1.  There is Mandamus Jurisdiction Over the CIS.................... 16

           1.  There is Mandamus Jurisdiction Over the FBI..................... 17

     C.     There is Federal Question Jurisdiction................................. 18

CONCLUSION..................................................................…..….... 18

# TABLE OF AUTHORITIES

## I. CASES

*Agbemaple v. INS,*
    No. 97-8547, 1998 WL 292441 (N.D.Ill. 1998) …………………...………3

*Ajmal v. Mueller,*
    No. 07-206, 2007 WL 2071873 (E.D.Pa. July 17, 2007)……………….... 16

*Alkenani v. Barrows,*
    356 F.Supp.2d 652 (N.D. Tex. 2005)……………………………………… 8

*Anjum v. Hansen,*
    No. 06-00319, 2007 WL 983215 (S.D. Ohio, Mar. 28, 2007)……..……... 17

*Assadzadeh v. Mueller,*
    No. 07-2676, 2007 WL 3252771 (E.D.Pa. Oct. 31, 2007)………...….…... 17

*Baez- Fernandez v. I.N.S.,*
    385 F. Supp. 2d 292 (S.D.N.Y. 2005)……………………………….... 6,7

*Bell v. Hood,*
    327 U.S. 678, 66 S.Ct. 773, 90 F.Ed. 939 (1946)…………………..……… 5

*Cao v. Upchurch,*
    496 F.Supp.2d 569 (E.D.Pa. 2007)……………………………………… 16

*Cordoba v. McElroy,*
    78 F.Supp.2d 240 (S.D.N.Y. 2000)………………………............... 5,18

*Fallini v. Hodel,*
    783 F.2d 1343 (9th Cir. 1986)…………………………….................. 15

*Hanbali v. Chertoff,*
    No. 07-50, 2007 WL 2407232 (W.D.Ken. Aug. 17, 2007)……….............. 17

*Ibrahim v. Chertoff,*
    529 F. Supp.2d 611 (E.D.N.C. 2007)……………………………………… 8

*Idaho Watershed Project v. Hahn,*
    307 F.3d 815 (9th Cir. 2002)………………………………................. 4

*Kaplan v. Chertoff,*
    481 F.Supp.2d 370 (E.D.Pa. 2007)……………………….……………8,9,11,12

*Kim v. Ashcroft,*
       340 F.Supp.2d 384 (S.D.N.Y. 2004)…………………………………….3,4,5,6,7,12

*Lazli v. United States,*
       No. 05-1680, 2007 WL 096351 (D.Or. Feb. 12, 2007)…………………… 16,17

*Mocanu v. Mueller,*
       Nos. 07-0445, 07-0971, 07-3223, 07-2718, 07-2859, 08-195,
       2008 WL 372459 (E.D.Pa. Feb. 8, 2008)……………………............. 10,17

*National Resources Defense Council v. Abraham,*
       355 F.3d 179 (2d Cir. 2004)………………………………………… 10

*Patel v. Reno,*
       134 F.3d 929 (9th Cir. 1998)……………………………….................. 15

*Reddy v. Commodity Futures Trading Comm'n,*
       191 F.3d 109 (2d Cir.1999)……………………………….................. 6

*Shaat v. Klapakis,*
       No. 06-5625, 2007 WL 2768859 (E.D.Pa 2007)……………................3,16,17

*Sharawneh v. Gonzales,*
       No. 07-0683, 2007 WL 2684250 (E.D.Pa. Sept. 10, 2007)……………..... 16

*Sze v. INS,*
       No. 97-0569, 1997 WL 446236 (N.D.Cal. July 24, 1997)………………… 16

*Wang v. Chertoff,*
       No. 07-0154, 2008 WL 681839 (W.D. Wash. Mar. 7, 2008)……………… 9

*Xin Chang v. Slattery,*
       55 F.3d 732 (2d Cir. 1995)………………………………………… 11

*Xin Liu v. Chertoff,*
       No. 06-2808, 2007 WL 243337 (E.D.Cal. 2007)………………...……... 3

*Yan v. Mueller,*
       No. 07-0313, 2007 WL 446236 (N.D.Cal. July 24, 1997)………………… 16

*Yan v. Mueller,*
       No. 07-0313, 2007 WL 1521732 (S.D.Tex. May 24, 2007)………………16

*Yu v. Brown,*
       36 F.Supp.2d 922 (D.N.M. 1999)………………………………….................3

## II. STATUTES

U.S. Const., Art. I, § 8, cl. 4………………………………...............................… 2

Pub. L. No. 105-119, 111 Stat. 2448 (1997)………………………………..11

5 U.S.C. § 553……………………………………………………………11

5 U.S.C. § 555(b)…………………………………………...............… 1,4,5,18

5 U.S.C. § 701-706……………………………………… 1,2,4,18

8 U.S.C. § 1329……………………………………………………… 2

8 U.S.C. § 1429……………………………………………………..1

8 U.S.C. § 1447……………………………………………………… 2,8

28 U.S.C. § 1331……………………………………….…. 1,2,5,15,18

28 U.S.C. § 1361………………………………………… 1,2

8 C.F.R. 316.4………………………………………………12

8 C.F.R. 334.2………………………………………………12

8 C.F.R. 335.1………………………………………………3

8 C.F.R. 335.3(a)………………………………...............… 3,8

Fed. R. Civ. P. 12(b)(1)……………………………………… 1

72 Fed. Reg. 4888-01 (proposed Feb. 1, 2007)…………………………… 12

## III. OTHER AUTHORITIES

14A Charles Alan Wright, Arthur C. Miller & Edward H.Cooper,
    Federal Practice and Procedure 3659 (3d ed. 1998)………...........................… 4,18

## PRELIMINARY STATEMENT

Petitioner, Mumtaz Khan, through undersigned counsel, respectfully submits this opposition to Respondents' motion for an order dismissing the action pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. In its Motion to Dismiss, Respondents assert that the Court lacks jurisdiction over the action. Petitioner maintains that the Court retains subject matter jurisdiction over the action pursuant to the APA, 5 U.S.C. § 555(b) and 5 U.S.C. § 701, in conjunction with the federal questions statute, 28 U.S.C. § 1331 as well as under the Mandamus Statute, 28 U.S.C. § 1361.

Respondents owe a non-discretionary duty to Petitioner to complete adjudication of his application within a reasonable time and Respondents have unreasonably delayed in processing his application, thereby denying Petitioner his right to become a naturalized citizen of the United States.

We are not asking this court to approve Petitioner's application, we are only asking the Court to compel Respondents to make a decision on Petitioner's application as required under the Immigration and Nationality Act. Accordingly, Respondents' motion to dismiss must be denied.

## FACTS AND BACKGROUND

Mr. Khan has been a lawful permanent resident of the United States since August 8, 2000. He filed his N-400 Application for Naturalization pursuant to 8 U.S.C. § 1429 on September 6, 2005. He received notice of his Naturalization Interview on October 12, 2005, scheduled for February 1, 2006. On January 5, 2006, Mr. Khan received notification that his Naturalization Interview was cancelled for "unforeseen circumstances".

On September 29, 2005, Mr. Khan was fingerprinted, resulting in a "non-hit", indicating that Mr. Khan has no criminal history within the United States. *See* Bijolle Decl. ¶ 12. Mr. Khan's application has been pending for over 30 months, as a result of pending background checks.[1]

Mr. Khan has experienced harm and anxiety as a result of the delay in his naturalization application. The delay in processing his application has deprived Mr. Khan of the privileges of U.S. Citizenship. He cannot vote, receive business and education loans and benefits reserved for citizens, obtain employment and employment opportunities where the position requires citizenship, and participate in the visa waiver program. Moreover, Mr. Khan cannot expeditiously sponsor his immediate relatives living in a volatile region of Pakistan for permanent residence in the United States.

On July 25, 2007 Mr. Khan filed this action seeking to compel the CIS or the FBI to adjudicate his application for naturalization.[2] Mr. Khan asserted the United States District Court for the Southern District of New York has jurisdiction pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701-706 (APA); 8 U.S.C. § 1329; 8 U.S.C. § 1447; 28 U.S.C. § 1331, federal question jurisdiction; 28 U.S.C. §1361, the mandamus statute; and Article I, section 8, clause 4 of the Constitution, which provides the federal judiciary's authority to consider whether immigration policies and procedures violate constitutional rights and protections.

---

[1] The CIS and FBI completed a similar background check of Mr. Khan prior to his grant of permanent resident status on August 8, 2000.

[2] Our complaint also names the U.S. Attorney's Office and the Attorney General as respondents. The U.S. Attorney General is the head of the U.S. Department of Justice and the chief law enforcement officer of the Federal Government. The Attorney General has the authority to naturalize persons as citizens of the United States pursuant to 8 U.S.C. § 1421(a). The Attorney General is also ultimately responsible for the FBI, a subdivision of the Department of Justice.

The Government submitted their answer on November 5, 2007, claiming the above jurisdictional provisions fail to provide subject matter jurisdiction over the complaint.

## ARGUMENT

Subject Matter Jurisdiction is properly asserted pursuant to the APA in conjunction with the federal question statue as well as under the mandamus statute. Respondents have a clear duty to adjudicate an application for naturalization within a reasonable period of time.

Although there may be no express statutory deadline applicable to Mr. Khan's application, the agency has no discretion over *whether* to adjudicate the application. (Emphasis added). The agency's regulations "unequivocally and specifically command the agency to adjudicate naturalization applications: The agency 'shall conduct an investigation,' 'shall grant the application if the applicant has complied with all requirements,' and 'shall' notify the applicant of the agency's decision." *Shaat v. Klapakis*, 2007 WL 2768859, *3 (E.D.Pa 2007), citing, 8 C.F.R. 335.1, 335.3(a).

This court has held that where the agency has a mandatory duty to adjudicate applications, they must process the applications within a reasonable time. *See Kim v. Ashcroft*, 340 F.Supp.2d 384, 393 (S.D.N.Y. 2004). In addition, district courts across the country have held that "[a] contrary position would permit the INS to delay indefinitely." *Agbemaple v. INS*, No. 97-8547, 1998 WL 292441, at *2 (N.D.Ill. 1998); *Xin Liu v. Chertoff*, No. 06-2808, 2007 WL 243337, at *3 n.6 (E.D.Cal. 2007); *Yu v. Brown*, 36 F.Supp.2d 922, 932 (D.N.M. 1999). Thus, the CIS and FBI are required to make a decision on Petitioner's application within a reasonable period of time.

3

On April 2, 2008, the CIS and FBI implicitly conceded that a 30 month delay was unreasonable when they issued the press release stating: "a joint plan to eliminate the backlog of name checks pending with the FBI". They have released a joint plan to complete name checks for applications pending for 3 years by May 2008 and complete name checks for application pending for 2 years by July 2008. *See* CIS Press Release, "USCIS and FBI Release Joint Plan to Eliminate Backlog of FBI Name Checks", Apr. 2, 2008. If Respondents' did not consider the current backlog to be unreasonable they would not have addressed it.

Moreover, the delay is unreasonable in light of national security interests. If Petitioner is a security risk then we should know about it. As stated above, Petitioner has been living in the United States without restriction as a Permanent Resident for the past eight years. Certainly, if he were a security risk, it would be in the best interest of national security to complete his background check as soon as possible rather than allowing him to reside in the United States.

## A. The APA in Conjunction with the Federal Question Statute Provides Jurisdiction.

The APA, 5 U.S.C. § 555(b) and 5 U.S.C. § 701 in conjunction with the federal question statute, 28 U.S.C. § 1331 gives the court subject matter jurisdiction to compel action from a government agency unlawfully withheld or unreasonably delayed. *Idaho Watershed Project v. Hahn*, 307 F.3d 815, 830 (9th Cir. 2002). *See also Kim v. Ashcroft*, 340 F.Supp.2d 384, 388-9 (S.D.N.Y. 2004). Plaintiffs seeking specific relief are given "the right to sue the government in a federal court by the APA but the subject matter jurisdiction basis is the federal question statute." *See* 14A Charles Alan Wright, Arthur

C. Miller & Edward H. Cooper, Federal Practice and Procedure 3659, at 51 (3d ed. 1998).[3]

Where a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331. The key provision in section 6 of the APA states, "with due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it." *See* 5 U.S.C. 555(b). (Emphasis added).

The court lacks jurisdiction over the subject matter where "such a claim is wholly insubstantial and frivolous". *See Kim v. Ashcroft*, 340 F.Supp.2d 384, 391. Accordingly, this Court "is obliged to consider whether there is any colorable basis for the claim that the CIS has violated Section 6 of the APA." *See Id.* at 391, citing, *Cordoba v. McElroy*, 78 F.Supp.2d 240, 244 (S.D.N.Y. 2000) (quoting *Bell v. Hood*, 327 U.S. 678, 682-84, 66 S.Ct. 773, 90 F.Ed. 939 (1946). The court must consider whether, under any set of facts that could be proved consistent with the Petitioner's allegations, defendants' delay in adjudicating his naturalization application is unreasonable under the APA.

The Second Circuit has observed that, "in determining reasonableness, we look to the source of delay- e.g., the complexity of the investigation as well as the extent to which the defendant participated in delaying the proceeding." *See Kim v. Ashcroft,* 340

---

[3] The federal question statute confers jurisdiction on the district courts over actions "arising under" federal law. Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States". An action arises under a federal statute where "the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another." *See Cordoba v. McElroy*, 78 F.Supp.2d 240, 243 (S.D.N.Y. 2000).

F.Supp.2d 384, 393 (S.D.N.Y. 2004), *citing, Reddy v. Commodity Futures Trading Comm'n*, 191 F.3d 109, 120 (2d Cir.1999).

Here the source of the delay is fully attributable to the CIS and FBI. Petitioner has abided by his immigration requirements under the law, and has not participated in delaying the proceedings.

Petitioner's application has been pending for approximately 30 months. In *Kim*, the Court found that there was subject matter jurisdiction where the petitioner's application was pending for 42 months. *Id.* at 393-4. Here the court stated:

> "[a]lthough there is no statutory or regulatory deadline by which the CIS must adjudicate an application, at some point, defendants' failure to take any action runs afoul of 5 U.S.C. 555(b). Were it otherwise, the CIS could hold adjustment application in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic- the CIS simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely. This result is explicitly foreclosed by the APA. See Id. at 393.

In the instant case, Petitioner has a right to have the USCIS adjudicate his application within a reasonable time, as required by section 6 of the APA. The delay of 30 months from the date Petitioner filed his naturalization application is unreasonable. Accordingly, subject matter jurisdiction exits pursuant to the APA in conjunction with the federal question statute.

## 1. The APA in Conjunction with the Federal Question Statute Provides Jurisdiction Over CIS

Respondents incorrectly claim that within this district, the only decision addressing APA jurisdiction on these facts held that there was none. *See Baez- Fernandez v. I.N.S.,* 385 F. Supp. 2d 292, 294-95 (S.D.N.Y. 2005). Respondents' assertion is wrong for the reasons explained below.

The facts of *Baez-Fernandez* are distinguishable from our case. In *Baez-Fernandez* the applicant's first naturalization application was denied as a result of his criminal history. He filed a second application for naturalization while in removal proceedings, without appealing the denial of his first application. The petitioner later requested a declaratory judgment on his second application. Specific to these facts, the court found no jurisdiction under the INA. The court also found that neither the Administrative Procedure Act nor the declaratory judgment statutes served as an independent grant of jurisdiction. *Id.* at 295. In the instant case, we are not claiming jurisdiction pursuant to the INA. We agree that the APA is not an independent grant of jurisdiction. Rather, we claim jurisdiction pursuant to the APA in conjunction with the federal question statute.

Moreover, courts in this district have held that the federal question statute in conjunction with the APA confers jurisdiction on the district courts over actions arising under federal law. *See Kim v. Aschroft*, 340 F.Supp.2d 384, 388-89 (S.D.N.Y. 2004). In *Kim*, this court found that, "judges have not consistently declined to exercise subject matter jurisdiction over cases such as that brought by Kim." *Id.* at 389. Here the court found that alleging a violation of section 6 of the APA brings the action within federal jurisdiction. *Id.* at 389.

Accordingly, this court has held that subject matter jurisdiction exists pursuant to the APA and federal question statute where the delay is unreasonable. Petitioner has asserted the 30 month delay in adjudicating his case is unreasonable. Because it cannot be said that this claim is patently without merit, subject matter jurisdiction is properly asserted before this court.

The Respondents further states that the legislative intent was to omit a time requirement for adjudication based on the date the application was filed. The Respondents state the INA and federal regulation provide a timeliness requirement concerning adjudication of naturalization applications within 120 days of the examination, 8 C.F.R. 335.3(a), 8 U.S.C. 1447(b). Importantly, this time requirement is not triggered until the applicant is examined by the CIS. In support of their assertion that section 1447(b) serves as a jurisdictional bar for pre-examination applicants, Respondents cite a 2007 case from the U.S. District Court of the Eastern District of North Carolina that holds naturalization applicants do not have a right to have their applications adjudicated within a specific time frame. *See Ibrahim v. Chertoff*, 529 F. Supp.2d 611, 614 (E.D.N.C. 2007).

A recent decision, addressing this same issue found the remedy offered at section 1447(b) is not adequate where naturalization applicants have not been examined. *See Kaplan v. Chertoff*, 481 F.Supp.2d 370, 400 (E.D.Pa. 2007). The district court found that, "[c]ourts considering whether 1447 is the only mechanism through which applicants for naturalization may challenge inaction on their application have held that an APA claim is appropriate where 1447 provides no avenue for the court to adjudicate an application." *Id.* at 400; *See Alkenani v. Barrows,* 356 F.Supp.2d 652, 656-57 (N.D. Tex. 2005). Accordingly, district courts have held that Section 1447(b) does not serve as a bar to jurisdictional claims under the APA.

Finally, Respondents claim that the CIS is prohibited from adjudicating a case until the FBI name check is complete. Determining whether the delay is attributable to the FBI or CSI is a factual matter going to the merits of the petition rather than the court's

jurisdiction.  *See Kaplan v. Chertoff*, 481 F.Supp.2d 370, 402 (E.D.Pa. 2007).
Accordingly, Respondents' argument is not appropriate for consideration under a
12(b)(1) motion to dismiss for lack of subject matter jurisdiction.

      However, even assuming *arguendo*, that Respondents' argument is appropriate at
this stage, the CIS cannot abdicate responsibility for the name check once it is forwarded
to the FBI.  By Respondents' own admission, the CIS has taken no action since the file
was transferred to the FBI.   The CIS assigns name checks to the FBI on a contractual
basis.  If the CIS cannot adjudicate the case within a reasonable time, then the CIS should
provide additional resources to the FBI to conduct the name checks in a reasonable period
of time.  As the CIS retains a non-discretionary duty to adjudicate naturalization cases
they cannot pass responsibility to the FBI.  *See Wang v. Chertoff*, 2008 WL 681839, at *5
(W.D. Wash. Mar. 7, 2008).

      In addition, the government has stated the CIS is capable of expediting a FBI
criminal background check.  *See* Bijolle Decl. ¶ 10.  A recent CIS News Release also
provides a CIS and FBI joint plan to process all name checks pending more than three
years by May 2008 and process all name checks pending more than two years by July
2008.  *See* CIS Press Release, "USCIS and FBI Release Joint Plan to Eliminate Backlog
of FBI Name Checks", Apr. 2, 2008.  Accordingly, the CIS retains responsibility for the
FBI name check and is capable of expediting such requests.

      Moreover, the CIS failed to submit the 2002 expansion of the FBI name check
rule to notice-and-comment procedures as required by the Administrative Procedure Act
(APA).  Thus, the 2002 CIS regulations should be rendered invalid.  *See Mocanu v.
Mueller*, Nos. 07-0445, 07-0971, 07-3223, 07-2718, 07-2859, 08-195, 2008 WL 372459

(E.D.Pa. Feb. 8, 2008), *as modified by*, 2008 WL 570953 (E.D.Pa. Feb. 28, 2008).

Respondents claim the *Mocanu* decision was wrong without explanation. However,

based on a review of case law within the Second Circuit, this court must also find the

2002 regulations are invalid.

The CIS' use of the FBI name check procedure is a legislative agency rule

according to the Second Circuit's standard of interpretation regarding legislative and

interpretive agency regulation,[4] and as a result of CIS' failure to submit the rule to notice-

and-comment procedures as required by the APA, the 2002 CIS regulations are rendered

invalid.

The Second Circuit has interpreted the failure of an administrative agency to

submit a legislative rule through notice-and-comment procedure as having the effect of

rendering the rule invalid. *National Resources Defense Council v. Abraham*, 355 F.3d

179 (2d Cir. 2004) (Department of Energy rule amending the date for which energy

efficiency standards for central air conditioning units would be effective was held to be a

substantive, not interpretive, rule that was rendered invalid by the DOE's failure to

submit the rule to notice-and-comment procedures subject to 5 U.S.C. § 553 (APA));

---

[4] The Second Circuit has grappled with the often-times confusing distinction between interpretive and legislative agency rules in several cases, and has established a standard for determining which designation is appropriate for a given regulation. The Second Circuit has defined a "substantive" rule (which they held to mean a "legislative" rule) as a rule that "grants rights, imposes obligations, or produces other significant effects on private interests, while an interpretive rule is an agency's intended course of action, its tentative view of the meaning of a particular statutory term, or internal house-keeping measures organizing agency activities." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993) (internal quotation marks and citations omitted). Legislative rules have been further defined as rules that are binding on both the agency that administers it or adheres to it as well as the public, rules that impose new legal obligations on private parties, and rules that expand the classes of persons who are subject to existing legal obligations. *Sweet v. Seahan*, 235 F.3d 80, 91-92 (2d Cir. 2000).

*Xin Chang v. Slattery*, 55 F.3d 732 (2d Cir. 1995) (Rule promulgated by Attorney General allowing refugee status to be conferred upon Chinese aliens solely on the basis of their opposition to China's "one-child" forced-sterilization practices held to be legislative in nature because it changed existing policy with regards to China's "one-child" practices also held to be invalid because it was not submitted to notice-and-comment review).  In short, any legislative rule promulgated by an administrative agency that has not been subject to the notice-and-comment requirements of 5 U.S.C. § 553 will be held invalid in the Second Circuit.

### 2. The APA in Conjunction with the Federal Question Statute Provides Jurisdiction Over the FBI

Similarly, there is APA jurisdiction over the FBI, as they have unreasonably delayed the processing of Mr. Khan's background check.  It is clear from a number of Congressional enactments that Congress has imposed a mandatory duty on the FBI to perform background checks in these particular circumstances.[5] *See Kaplan v. Chertoff,* 481 F.Supp.2d 370, 400 (E.D.Pa. 2007).

For example, CIS has a mandatory duty to process naturalization applications, but cannot adjudicate such applications until it receives completed background checks from the FBI, Pub.L.No. 105-119, 111 Stat. 2448 (Nov. 26, 1997).   The Congressional scheme also provides that aliens must submit application fees to CIS, 8 C.F.R. 316.4, 334.2, a portion of which the CIS pays over to the FBI for fingerprint and name checks for that applicant.  *See* 72 Fed.Reg. 4888-01 (proposed Feb. 1, 2007) (to be codified at 40 C.F.R.

---

[5] An agency's mandatory duty to act is in essence an inquiry into legislative intent, which may be expressed in a single statute or from several Congressional enactments which, read together, clearly imply a mandatory duty. *See, Kaplan v. Chertoff,* 481 F.Supp.2d 370, 400 (E.D.Pa. 2007).

pt. 103) (proposing increase in application fee to pay, *inter alia,* "additional funds [to] the FBI for name check costs to enhance services".) Upon completion of the background check, the FBI submits a final report to CIS.

Under these circumstances, where Congress has conditioned CIS's mandatory action on FBI's completion of background checks, and where applicants must pay the FBI, through CIS, to complete the background checks, Congress has, by implication, imposed on the FBI a mandatory duty to complete the background checks. *See Kaplan v. Chertoff,* 481 F.Supp.2d 370, 401. Since the FBI has a mandatory duty to act, the APA requires that the FBI complete the criminal background checks in a reasonable amount of time.

Petitioner's N-400 application has been pending with the FBI since September 2005. Respondents cite to cases outside of this district that have held such a period of time is not unreasonable. However, this district has found that a period of 42 months may be unreasonable. *See Kim,* 340 F. Supp.2d 384, 393-4.

Respondents provide four factors to evaluate the reasonableness of the FBI's processing time: (1) enormous volume of background checks; (2) importance of national security interests; (3) FBI's good faith in handling background checks; and (4) expedited processing for Mr. Khan's case would result in others waiting before him getting pushed back in line. We review each factor in detail below.

First, the large volume of cases the FBI receives does not justify the 30 month delay in processing Mr. Khan's name check. The FBI receives a similar number of background check requests for Adjustment of Status cases. For such cases, the USCIS has stated, where the background check has been pending for 180 days and is otherwise

approvable the adjudicator should approve the case and order production of the green card. The USCIS Memorandum explains, "[t]he FBI has committed to providing FBI name check results within this time period [180 days]." *See* C.I.S. Interoffice Memorandum, HQ 70/23 & 70/28.1, Feb. 4, 2008. It is entirely unreasonable that the FBI is able to commit to providing name check results within 180 days for Adjustment of Status cases, but cannot for similar background checks for Naturalization applicants who have already undergone a complete background check when they received their green cards. It is without reason that preference should be given to Adjustment of Status applicants.

Second, Respondents claim the interests of national security merit the 30 month delay in processing Petitioner's application for naturalization. We agree that immigration procedures should defer to the interests of national security. However, as stated in Respondents' motion, Petitioner lives in the U.S. and travels abroad freely. Moreover, he has been living in the U.S. without restraint for the past eight years. The interests of national security demand a rapid background check of such individuals. The added importance of national security since September 11, make a 30 month delay in processing background checks unreasonable.

The 2007 CIS Ombudsman Annual Report to Congress addressed the value of the FBI name checks. In agreeing with the assessment of many case workers and supervisors at the CIS field offices and service centers, the CIS Ombudsman explained:

> *Delays in the name check process actually prolong an individual's presence in the United States while the check is pending. In this sense, the current USCIS name check policy may increase the risk to national security by extending the time a potential criminal or terrorist remains in the country.* (2007 Annual Report at p. 40.)

As stated above, the CIS Ombudsman agrees that the delays in the FBI name check are unreasonable as they may increase the risk of national security. Moreover, according to the 2007 Report, the Ombudsman was unable to ascertain from the USCIS the total number of actual problems discovered exclusively as a result of the FBI name check, finding most if not all of the problem cases could be revealed by the other more efficient, automated criminal and security checks that CIS initiates. *See* Citizenship and Immigration Services Ombudsman Annual Report 2007, June 11, 2007, at p.41.

Third, Respondents claim the Court should consider the FBI's good faith in handling this volume of name checks. However, their stated good faith in handling such cases does not excuse a 30 month delay in adjudicating Petitioner's application. In addition, official governmental review of the FBI name check procedure has resulted in calls for the FBI and CIS to re-examine the value of the name check procedure for the past three consecutive years. *See* Department of Homeland Security Office of Inspector General, Review of U.S. Citizenship and Immigration Services' Alien Security Checks, OIG-06-06, Nov. 2005, at p. 22; Citizenship and Immigration Services Ombudsman Annual Report 2006, June 29, 2006, at p.25; and Citizenship and Immigration Services Ombudsman Annual Report 2007, June 11, 2007, at p.40.

Moreover, the CIS and FBI released a joint plan to reduce backlogs for naturalization applicants, stating, "the goal is to complete 98 percent of all name checks within 30 days…. the remaining two percent, which represent the most difficult name checks and require additional time to complete, within 90 days or less." *See* CIS Press Release, "USCIS and FBI Release Joint Plan to Eliminate Backlog of FBI Name

14

Checks", Apr. 2, 2008.  Accordingly, the CIS and FBI have recognized that the current backlogs are unreasonable.

Fourth, Respondents claim that granting Mr. Khan's petition will create a "perverse incentive for applicants to file lawsuits, placing a further burden on the agency to defend suits like this one while disturbing the equity of the FBI's 'first-in, first-served protocol.'"  This argument is without merit, and in effect seeks to blame Petitioner for the FBI's inaction.  Petitioner is not responsible for failures on the part of the FBI or the CIS. He has waited 30 months to receive a decision on his naturalization application.  By law he is entitled to seek redress in this court and he has no adequate alternative remedies at law.

### B.  The Mandamus Statute Provides Jurisdiction

A writ of Mandamus under 28 U.S.C. § 1361 is an extraordinary remedy which is available to compel a federal officer, employee or agency to perform a duty only if: (1) the plaintiff's claim is "clear and certain;" (2) "the official's duty to act is nondiscretionary, ministerial, and so plainly prescribed as to be free from doubt;" and (3) "no other adequate remedy is available."  *Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1998).  Whether each element of the three-part mandamus test is satisfied is a question of law.  *Fallini v. Hodel*, 783 F.2d 1343, 1345 (9th Cir. 1986).

A majority of courts that have addressed this issue agree that, "for purposes of compelling agency action that has been unreasonably delayed, the mandamus statute and the APA are co-extensive."  *Shaat v. Klapakis*, No. 06-5625, 2007 WL 2768859, *3 (E.D.Pa 2007) quoting *Sharawneh v. Gonzales*, No. 07-683,  2007 WL 2684250, at *3 (E.D.Pa. Sept. 10, 2007) (quoting *Cao v. Upchurch*, 496 F.Supp.2d 569, 575 (E.D.Pa.

2007) and collecting cases); *see Ajmal v. Mueller*, 2007 WL 2071873, at *2 n. 2 (E.D.Pa. July 17, 2007); *Sze v. INS*, No. 97-0569, 1997 WL 446236, at *4 (N.D.Cal. July 24, 1997); *Yan v. Mueller*, No. 07-0313, 2007 WL 446236, at *4 (N.D.Cal. July 24, 1997); *Yan v. Mueller*, No. 07-0313, 2007 WL 1521732, at *8 (S.D.Tex. May 24, 2007). *But see Lazli v. United States*, No. 05-1680, 2007 WL 096351, at *4, 8, 15-18 (D.Or. Feb. 12, 2007) (granting mandamus relief to compel CIS to adjudicate naturalization application after noting uncertainty over whether the APA governs proceedings under the INA).

## 1. There is Mandamus Jurisdiction Over the CIS

Applying the standards stated above there is mandamus jurisdiction over the CIS. First, Mr. Khan filed an N-400 application and complied with the requirements for naturalization. Thus, his claim adjudication of his application is clear and certain. Second, as explained above the government owes a nondiscretionary duty to adjudicate Mr. Khan's application. Third, Mr. Khan's application has been pending for over 30 months. For the reasons stated above, 30 months constitutes an unreasonable delay in adjudication and the CIS has not diligently sought to have any of the security checks promptly completed by others, such as by requesting expedited consideration. Finally, Mr. Khan has no alternative adequate remedies at law. Continuing to wait for over two years is not an adequate remedy to prevent the application of mandamus jurisdiction.

## 2. There is Mandamus Jurisdiction Over the FBI

As explained above Mr. Khan has complied with the requirements for naturalization and the FBI has a nondiscretionary duty to adjudicate his application. The delay of over 30 months is unreasonable for the reasons provided above, and Mr. Khan has no alternative remedies at law.

Respondents argue there is no mandamus jurisdiction over the FBI because there is no statute or regulation governing how thoroughly or quickly the FBI conducts its background checks for applicants seeking naturalization. As explained above, the FBI does not have discretion whether to complete its background checks. The lack of a particular statute on the timing of this procedure does not excuse the FBI from acting within a reasonable period of time. Several courts have found jurisdiction to compel agency action on stalled naturalization applications in this context and have denied the government's motions to dismiss. *See Lazli v. USCIS*, No. 05-1680, 2007 WL 2768859, at *17-19 (E.D.Pa. Sept. 21, 2007) (the court found jurisdiction over the action, determined that the delay was unreasonable, and then ordered the FBI to complete the background check and USCIS to complete the adjudication of the application); *Assadzadeh v. Mueller*, No. 07-2676, 2007 WL 3252771 at *5 (E.D.Pa. Oct. 31, 2007) (denying the government's motion to dismiss the APA and mandamus claims); *Shaat v. Klapakis*, No. 06-5625, at *4 (E.D.Pa. Sept. 24, 2007) (same); *Hanbali v. Chertoff*, No. 07-50, 2007 WL 2407232, at *3 (W.D.Ken. Aug. 17, 2007) (same); *Anjum v. Hansen*, No. 06-00319, 2007 WL 983215, at *5 (S.D. Ohio, Mar. 28, 2007) (same). *See also Mocanu v. Mueller*, No. 07-445 (E.D.Pa. Feb. 8, 2008) (finding the CIS' use of the FBI name check program has never been authorized by statute or regulation, and its continued application is improper because of the unreasonable delays it has caused in the adjudication of Plaintiffs' application for naturalization).

## C. There is Federal Question Jurisdiction

As explained above, subject matter jurisdiction exists pursuant to the APA, 5 U.S.C. 555(b) and 5 U.S.C. 701, in conjunction with the federal questions statute, 28

17

U.S.C. 1331.  The federal question statute confers jurisdiction on the district courts over actions "arising under" federal law.  Section 1331 provides that "the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States".  An action arises under a federal statute where "the statute creates or is a necessary element of the cause of action or the plaintiff would prevail if the statute were construed one way and lose if it were construed another."  *See Cordoba v. McElroy*, 78 F.Supp.2d 240, 243 (S.D.N.Y. 2000).

Where a plaintiff alleges that the defendant violated the APA, the court may exercise subject matter jurisdiction pursuant to section 1331.  Plaintiffs seeking specific relief are given "the right to sue the government in a federal court by the APA but the subject matter jurisdiction basis is the federal question statute."  *See* 14A Charles Alan Wright, Arthur C. Miller & Edward H. Cooper, Federal Practice and Procedure 3659, at 51 (3d ed. 1998).

## CONCLUSION

For the abovementioned reasons, the Court has jurisdiction over the subject matter of this case, and should deny the Respondents' motion to dismiss the complaint for lack of subject matter jurisdiction.

Dated:  New York, New York
      April 11, 2008

                            By:    /s/ Rakhel Speyer Milstein
                                      RAKHEL SPEYER MILSTEIN
                                      Attorney for the Petitioner
                                      Assadi & Milstein, LLP
                                      200 W. 57th St., Ste. 900
                                      New York, NY 10019
                                      Telephone: (212) 981-1981
                                      Fax: (212) 980-2968